**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| IVAN ANZURES, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | EP-11-CV-395-KC |
| | § | |
| PROLOGIS TEXAS I LLC, | § | |
| PROLOGIS TEXAS II LLC, | § | |
| PROLOGIS NA2 TEXAS LLC, | § | |
| PROLOGIS MANAGEMENT | § | |
| INCORPORATED and ELIZABETH | § | |
| RODRIGUEZ, | § | |
| | § | |
|    Defendants. | § | |

## ORDER

On this day, the Court considered both Defendants Prologis and Prologis Management Inc.'s (collectively "Defendant Prologis") Traditional and No-Evidence Motion for Summary Judgment ("Defendant Prologis Summary Judgment Motion"), ECF No. 110, and Defendant Preservation Products, Inc. d/b/a Southern Roof Consultants ("Defendant Southern") Motion for Summary Judgment ("Defendant Southern Summary Judgment Motion"), ECF No. 109.  For the reasons set forth herein, the Defendant Prologis Summary Judgment Motion is **DENIED** and the Defendant Southern Summary Judgment Motion is **GRANTED**.

## I.   BACKGROUND

This case involves a roofer's fall through a skylight that occurred on May 20, 2010, at Defendant Prologis's warehouse in El Paso County, Texas.  Def. Southern's Proposed Undisputed Facts ¶¶ 1, 10, ECF No. 109-17; Pl.'s Resp. Supplemental App. ("Plaintiff's Appendix") 8, ECF No. 117-1.  At the time of the accident, Defendant Prologis owned a number of warehouses in El Paso County, Texas, including one at 1790 Commerce Park Drive.  *See* Def.

Prologis's Proposed Undisputed Facts ¶ 1, Pl.'s App. 3.  Defendant Prologis managed this

building and rented out storage space to tenants.  *See* Def. Prologis's Proposed Undisputed Facts

¶ 5, Pl.'s App. 2.  As part of its management of the warehouse, Defendant Prologis hired

Defendant Southern to perform annual inspections of the warehouse roof and to provide a list of

preventative maintenance and immediate repairs that the warehouse roof required.  *See* Def.

Southern's Undisputed Facts ¶ 3; Pl.'s App. 8.  At his deposition, Calvin R. Schreiner

("Schreiner"), Defendant Prologis's head of capital improvements in Canada, the United States,

Mexico, and South America, stated that Defendant Prologis had worked with Defendant

Southern for nearly a decade.  Resp. Ex. F ("Schreiner Deposition") 35:3-8, 58:11-9, ECF No.

117-2.

   A month before the May 20, 2010 accident, Defendant Southern inspected Defendant

Prologis's warehouse roof.  Decl. of John Biggers ¶ 6, ECF No. 109-14 (noting that although the

annual inspection report is dated May 24, 2010, the inspection actually occurred in "April of

2010").  As a result of this inspection, Defendant Southern created a roof inspection report and a

list of necessary repairs (the "Repair List").  *See* Def. Southern Mot. Summ. J. Ex. O 1-2, ECF

No. 109-16; Def. Southern. Mot. Summ. J. Ex. K ("Repair List") 1, ECF No. 109-12.  In full, the

Repair List states:

> 1. Repair a total of 18 punctures from two (2) pieces of equipment being replaced by
>    the center tenant.
> 2. Install Modified Bit. Capsheet (full width) over both expansion joints.-
> 3. 5' of marked open base flashing needs to be re-fused and coated in the SE corner.
> 4. Cut and patch 1-2" diameter blister over the ProLogis office (NW corner)
> 5. Replace 1 (one) skylight dome. (by the roof access ladder)
> 6. Re-secure (new drive pins) at the surface mount at the perimeter edge.
> 7. Repair split in membrane at perimeter of lead flashing at the roof drain.

Repair List 1.

2

Defendant Prologis adopted Defendant Southern's Repair List and hired Empire Roof, Ltd. ("Empire") to complete the repairs indicated. *See* Schreiner Dep. 75:19-22; Def. Southern's Undisputed Facts ¶¶ 4-6; Pl.'s App. 8.

In the early morning of May 20, 2010, Plaintiff Ivan Anzures ("Plaintiff"), an employee of Empire, and four other Empire employees arrived at Defendant Prologis's warehouse to repair the roof. *See* First Summ. J. Mot. Ex. B ("Plaintiff Deposition") 39:17-40:18, ECF No. 62-3. The Empire workers were given that day's work orders by Empire. *Id*. at 40:13-18. When the Empire workers arrived at Defendant Prologis's warehouse, no one from Defendant Prologis met with them. Def. Prologis's Undisputed Facts ¶¶ 25; Pl.'s App. 5. Rather, according to Plaintiff, the Empire workers directly proceeded to climb onto the warehouse roof and began their work. *See* Pl. Dep. 39:17-22. According to Plaintiff, he and his co-workers had been on the roof for about ten minutes and were repairing an expansion joint when he fell onto and through a skylight. *Id*. at 42:12-43:4; Def. Southern's Proposed Undisputed Facts ¶ 10; Pl.'s App. 8. The skylight that Plaintiff fell through was not covered, guarded, or surrounded with protective netting. *See* Pl.'s App. 13; Rodriguez Dep. 26:8-12, ECF No. 76-2.

Because of the fall, Plaintiff broke his pelvis and arm and fractured his skull. Pl.'s App. 13-14. Sometime after the accident, the Occupational Safety and Health Administration ("OSHA") and Defendant Prologis reached a settlement that required Defendant Prologis to put a barrier on the skylight that Plaintiff had fallen through. Schreiner Dep. 47:11-18.

Because of the injuries he suffered, Plaintiff brought suit on August 24, 2011, in County Court at Law No. 6 of El Paso County, Texas. *See* Compl., ECF No. 1.[1] In the state court Petition, Plaintiff alleged state law negligence and premises liability claims. Compl. 3-4.

---

[1] The state court Petition begins on page thirteen and ends on page eighteen of the Notice of Removal, ECF No. 1. When referencing it, this Order uses the Petition's internal pagination.

Plaintiff also claimed that Prologis Texas I LLC, Prologis Texas II LLC, Prologis NA2 Texas LLC, and Prologis Management Inc. owned the premises on which he was injured, and that Elizabeth Rodriguez ("Rodriguez") managed the premises. *Id.* at 3-4. Consequently, the state court Petition named Prologis Texas I LLC, Prologis Texas II LLC, Prologis NA2 Texas LLC, Prologis Management Inc., and Rodriguez as defendants. *Id.* at 1.

Those Defendants removed the lawsuit to this Court on September 28, 2011, based on this Court's diversity jurisdiction. Notice of Removal 1-5, ECF No. 1. On January 31, 2012, the Court dismissed Rodriguez from the case after concluding she had been improperly joined. January 31, 2012, Order 14, ECF No. 17.

On April 30, 2012, the parties filed a joint stipulation of dismissal of Defendants Prologis Texas I LLC, Prologis Texas II LLC, and Prologis NA2 Texas LLC. Joint Stipulation 1-2, ECF No. 42. Consequently, Prologis Management Inc. became the only remaining Defendant in this case. Order of Dismissal 1, ECF No. 46.

Also on April 30, 2012, Plaintiff filed a motion requesting leave to file an amended complaint. *See* Mot. to Amend 1-2, ECF No. 41. Plaintiff filed the Motion to Amend after the deadline to join parties and amend pleadings set out in the Court's Scheduling Order. *See id.*; Scheduling Order 1, ECF No. 9. In the Motion, Plaintiff sought leave to add a negligent hiring claim and add three defendants: (1) Prologis, (2) Defendant Southern, and (3) Empire Roofing. Proposed Compl. 1-6, ECF No. 41-1. Before the Court ruled on the Motion to Amend, Prologis Management Inc. moved, on June 6, 2012, for summary judgment. First Summary Judgment Motion 21, ECF No. 62. The Court ruled on both the Motion to Amend and the First Summary J. Mot. on August 10, 2012. *See generally* August 10, 2012, Order, ECF No. 81. In its August 10, 2012, Order, the Court granted Plaintiff leave to join Defendant Prologis and Defendant

Southern, but not Empire, and leave to amend the pleadings.  *Id*. at 25.  In light of the Court's

ruling on the Motion to Amend, the Court denied the First Summary Judgment Motion as moot.

*Id*.  On August 16, 2012, Plaintiff submitted an Amended Complaint, ECF No. 84, the operative

complaint in this case.  Am. Compl 5.

On December 10, 2012, Defendant Southern moved for summary judgment.  Def.

Southern Summ. J. Mot. 14.  On the next day, Defendant Prologis also moved for summary

judgment.  Def. Prologis Summ. J. Mot. 30.  Plaintiff filed a timely Response in opposition to

both motions for summary judgment on January 14, 2013.  Response 22, ECF No. 117.

Defendant Southern submitted a timely Reply to the Response on January 18, 2013.  Def.

Southern Reply 10, ECF No. 119.  Likewise, Defendant Prologis submitted a timely Reply to the

Response on January 22, 2013.  Def. Prologis Reply 24, ECF No. 121.

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Weaver v. CCA

Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).  "A fact is 'material' if its resolution in favor of

one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star

State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232

F.3d 473, 477 (5th Cir. 2000) (per curiam)).  A dispute about a material fact is genuine only "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

A court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## B.     Defendant Prologis's Motion for Summary Judgment

Defendant Prologis argues that because it owned the warehouse where the fall occurred, it is entitled to the legal protections of chapter 95 of the Texas Civil Practice and Remedies

Code.  *See* Def. Prologis Summ. J. Mot. 4-21.  Defendant Prologis claims that one section of

chapter 95—that is, section 95.003—bars all of Plaintiff's claims against Defendant Prologis.  *Id.*

at 11-21.  Defendant Prologis further argues that it is entitled to summary judgment because,

according to Defendant Prologis, Plaintiff has failed to present evidence sufficient to show that

section 95.003 does not bar his claims.  *Id.*  In response, Plaintiff claims that this case does not

fall within the scope of chapter 95 and thus section 95.003 does not bar his claims.  Resp. 15.

Plaintiff further argues that even if this case falls under the scope of chapter 95, there are

questions of material fact as to whether section 95.003 is applicable and therefore summary

judgment is not appropriate.  *Id.* at 17-20.

### 1.    Chapter 95's limitations on property owner's liability

Prior to the passage of chapter 95, the common law controlled the liability of a property

owner to a contractor injured while working on the property owner's premises.  *See Guidry v.

Fairways Offshore Exploration, Inc.*, 03:06-CV-513, 2008 WL 4425566, at *3 (S.D. Tex. Sept.

30, 2008).  However, in 1996, the Texas legislature passed chapter 95 as part of a broad "tort

reform" effort.  *Sinegal v. Ryan Marine Servs.*, 712 F. Supp. 2d 597, 601-02 (S.D. Tex. 2008)

(citing *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 244-45 (5th Cir. 2005)).  Chapter

95 modified "the common law approach by protecting the owner from liability unless it has

actual knowledge of the dangerous activity resulting in the injury and fails to adequately warn of

the danger."  *Guidry*, 2008 WL 4425566, at *3.  Chapter 95, via section 95.003, modifies this by

codifying that

> [a] property owner is not liable for personal injury, death, or property damage to a
> contractor, subcontractor, or an employee of a contractor or subcontractor who
> constructs, repairs, renovates, or modifies an improvement to real property,
> including personal injury, death, or property damage arising from the failure to
> provide a safe workplace unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code Ann. § 95.003 (West 1996).

If applicable, section 95.003 bars both premises defect and negligent activity claims arising from "the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." *See id.*; Tex. Civ. Prac. & Rem. Code Ann. § 95.002 (West 1996); *Arsement*, 400 F.3d at 249. These are the two claims that Plaintiff raises against Defendant Prologis. Am. Compl. 1-4.[2] However, for section 95.003 to apply, this case must first fall under the scope of chapter 95.

### 2.       Scope of chapter 95

The scope of chapter 95 is governed by section 95.002. Specifically, chapter 95 is only applicable to a claim

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Civ. Prac. & Rem. § 95.002.

A defendant bears the burden of satisfying the conditions of section 95.002. *See Sinegal*, 712 F. Supp. 2d at 602 (citing *Jones v. Apache Corp.*, No. G-05-499, 2007 WL 656268, at *2 (S.D. Tex. Feb. 27, 2007)). Whether a defendant has met this burden is a question of law. *See, e.g.*, *Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 802 (Tex. App. 2011). If a defendant does not

---

[2] Included in Plaintiff's negligence claim is a reference to Defendant Prologis's negligent hiring of Defendant Southern. *See* Am. Compl. 3. This negligent hiring claim is discussed below in a separate section.

satisfy the conditions of section 95.002, a defendant cannot rely on other sections of chapter 95, such as section 95.003. *See Sinegal*, 712 F. Supp. 2d at 602.

The parties do not contest that Defendant Prologis meets the requirements of section 95.002(1) because it owned and managed the warehouse and because Plaintiff was an employee of a contractor working on the warehouse. *See* Def. Prologis Mot. Summ. J. 6-8. To support this, Defendant Prologis points to ownership records indicating that it owns the warehouse.[3] *See generally* Ex. J, ECF No. 110-10. Plaintiff's own deposition testimony indicates that he was an employee of a contractor—that is, Empire—working on Defendant Prologis's warehouse. *See* Pl. Dep. 9:11-13. Plaintiff does not contest these points. *See generally* Resp.

Rather, the parties contest whether section 95.002(2) is satisfied. Section 95.002(2) is only fulfilled if the injury "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." Civ. Prac. & Rem. § 95.002(2). Defendant Prologis argues that, as a matter of law, an injury "arises" for purposes of section 95.002(2) as long as the plaintiff's "injuries relate to or arise from the plaintiff's work on the defendant-owner's premises . . . ." Def. Prologis Mot. Summ. J. 9. Defendant Prologis claims that since Plaintiff was working on the roof when he fell through the skylight, the injury arose from a condition of the property and therefore the requirements of section 95.002(2) are met. *Id*. at 8-9. Plaintiff in turn argues that, as a matter of law, an injury only "arises" for purposes of section 95.002(2), if the injury is directly caused by the object of the plaintiff's work. *See* Resp. 15-17. Accordingly, Plaintiff concludes that

---

[3] Defendant Prologis also argues that Prologis Management Inc., the corporate entity which managed the warehouse, is entitled to protection under chapter 95 because it managed the property. *See* Def. Prologis Mot. Summ. J. 6-7. This argument, which Plaintiff does not respond to, is an accurate statement of Texas law. *See, e.g.*, *Padron v. L & M Properties*, 11-02-00151-CV, 2003 WL 253927, at *3 (Tex. App. Feb. 6, 2003) ("A property management company acts as an agent of the property owner and is entitled to the protection from liability provided for in [c]hapter 95.").

because he was injured by a skylight which he was not "hired to repair or perform work on," section 95.002(2) is not fulfilled.  *Id*. at 17.

Although the Texas Supreme Court has not discussed when, in the context of section 95.002(2), an injury "arises" from the condition or use of an improvement to real property where a contractor or subcontractor constructs, repairs, renovates, or modifies the improvement, the United States Court of Appeals for the Fifth Circuit has examined the issue.  In 2005, in *Spears v. Crown Central Petroleum Corp.*, the Fifth Circuit examined a case with facts similar to those in this case.  *See* 133 F. App'x 129, 129-30 (5th Cir. 2005).  In *Spears*, the plaintiff was assigned to work on a heat exchanger located on the defendant's property.  *Id*.  Like Plaintiff, who fell while on his way to fix an expansion joint, the plaintiff in *Spears* was injured when he tripped and fell as he was walking towards the heat exchanger.  *See id*.  After examining the relevant decisions of Texas courts, the Fifth Circuit concluded that the term "arises," in section 95.002(2), had been "unanimously" construed broadly, and made an *Erie* guess that section 95.002(2) was fulfilled by the facts of that case.  *See id*. at 131.  Given the factually similarity of this case to *Spears*, the *Spears* holding is particularly persuasive.

This broad construction of the term "arises," parallels the conclusion of most courts, since the *Spears* court in 2005, that have examined what it means for an injury to arise from the condition or use of an improvement to real property.  *See, e.g.*, *Covarrubias v. Diamond Shamrock Ref. Co.*, 359 S.W.3d 298, 302-03 (Tex. App. 2012) (surveying Texas courts and concluding that an injury which occurs when accessing a workspace is within the scope of chapter 95); *Sinegal*, 712 F. Supp. 2d. at 604.

Regardless, Plaintiff argues for a narrow construction of the term "arises."  Plaintiff primarily relies on one case, *Hernandez v. Brinker Int'l, Inc.*, which found the requirements of

section 95.002 were not fulfilled when an employee, who was hired to repair an air conditioning

unit on top of a roof, was injured when the roof collapsed.  *See* 285 S.W.3d 152, 153-4 (Tex.

App. 2009).  However, this opinion is of limited value for a number of reasons.  First, this was a

plurality opinion.  Justice Jeffrey V. Brown found that the injury did not arise from the

employee's work—that is, repairing the air conditioning unit—and therefore section 95.002(2)

was not fulfilled in this scenario.  *Id*. at 156-61.  Justice Leslie B. Yates, dissenting, found that

the injury did arise from the employee's work—that is, repairing the overall roof structure—and

therefore section 95.002(2) was fulfilled in this scenario.  *Id*. at 164-66.  Justice John S.

Anderson concurred with Justice Brown's conclusion—that section 95.002 was not applicable in

this case—but for a different reason.  *See id*. at 162-64.  Justice Anderson concluded that section

95.002(1) was not fulfilled because the defendant had not properly demonstrated its ownership of

the property.  *See id*.  As such, the *Hernandez* opinion is itself split on what it means for an

injury to arise from the condition or use of an improvement to real property.  Second, a number

of Texas courts have disagreed with Justice Brown's reasoning in *Hernandez*.  *See, e.g.*, *Petri v.

Kestrel Oil & Gas Properties, L.P.*, 878 F. Supp. 2d 744, 771 n.20 (S.D. Tex. 2012) (also noting

the split nature of the *Hernandez* panel and concluding that "*Hernandez* has been widely

rejected"); *Gorman*, 335 S.W.3d at 805 ("The plurality opinion of the Fourteenth Court of

Appeals in *Hernandez* appears to be a departure from the existing case law of other intermediate

courts of appeals."); *Covarrubias*, 359 S.W.3d at 301-02.

   Plaintiff's remaining argument for a limited reading of the term "arises" is not persuasive.

Plaintiff relies upon a series of questions that then-Representative, and now United States

District Judge, Robert A. Junell answered during debate of section 95.002(2) in the Texas House

of Representatives.  *See* Resp. 15-16 (citing *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d

688, 708 (Tex. App. 2004)).  Plaintiff argues that these statements mandate a limited reading of

the term "arises."  *See id*.  But such legislative history is of limited utility because "in

determining the legislative intent behind chapter 95 of the Texas Civil Practice and Remedies

Code, [a court] look[s] solely at the plain and common meaning of the words of the statute."

*Dyall*, 152 S.W.3d at 708 (citing *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d

937, 939 (Tex. 1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex. 1990)).  As

such, the Court gives little weight to these statements and Plaintiff's argument.

     Given the factual similarity between this case and the *Spears* case and Texas courts'

broad construction of term "arises," this Court finds that since Plaintiff was on the roof to make

repairs to the roof, his fall through the skylight fulfills the arising requirement of section

95.002(2).  *See Spears*, 133 F. App'x at 129-31.  Therefore because both conditions of section

95.002 are fulfilled, this case is within the scope of chapter 95.  *See Sinegal*, 712 F. Supp. 2d at

602.

### 3.     Applicability of section 95.003

     Because this case is within the scope of chapter 95, the Court now considers if section

95.003, as Defendant Prologis argues, is applicable.  If applicable, section 95.003 would bar

Plaintiff's premises liability and negligence claims arising from the accident on Defendant

Prologis's warehouse roof.  *See Arsement*, 400 F.3d at 249.  In its entirety, section 95.003 states

that

> [a] property owner is not liable for personal injury, death, or property damage to a
> contractor, subcontractor, or an employee of a contractor or subcontractor who
> constructs, repairs, renovates, or modifies an improvement to real property, including
> personal injury, death, or property damage arising from the failure to provide a safe
> workplace unless:

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

Civ. Prac. & Rem. § 95.003.

Succinctly, to overcome section 95.003 and bring either a negligence or premises liability claim arising from a danger or condition on a defendant's property, a plaintiff must show that the defendant "1) exercise[d] 'some control over the manner in which the work is performed;' 2) ha[d] 'actual knowledge of the danger or condition' resulting in the injury; and 3) fail[ed] to adequately warn." *See Sinegal*, 712 F. Supp. 2d at 604 (quoting Civ. Prac. & Rem. § 95.003). Whether these three conditions are met is a question of fact. *See Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 376 (Tex. App. 2009) (submitting to a jury the question of whether a defendant retained control of the manner in which the work was performed); *Phillips v. The Dow Chem. Co.*, 186 S.W.3d 121, 133 (Tex. App. 2005). Summary judgment, for a defendant, is not appropriate when there is a genuine issue of material fact that the defendant had control, possessed knowledge, and failed to warn. *See Franks v. Chevron Corp.*, 3:06-CV-506, 2007 WL 2330296, at *7-8 (S.D. Tex. Aug. 13, 2007) (denying summary judgment when there was a genuine issue of material fact as to all three conditions).

### a.    Control

The first condition of section 95.003 requires that, for the defendant to be liable, the defendant "exercise[d] or retain[ed] some control over the manner in which the work [was] performed." Civ. Prac. & Rem. § 95.003. This control can be either contractual or actual. *Union Carbide*, 313 S.W.3d at 375 (citing *Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex. App. 2008)).

Defendant Prologis argues that its contract with Empire did not create a contractual right of control over Empire or Plaintiff's manner of work.  Def. Prologis Mot. Summ. J. 11-14.  To support this position, Defendant Prologis has produced the service agreement between itself and Empire.  *See generally* Def. Prologis Mot. Summ. J. Ex. E, ECF No. 110-5.  Defendant Prologis argues that a number of provisions in this contract—such as those delineating responsibility for supplies, safety equipment, and permits—all indicate that Defendant Prologis did not have contractual control over Empire or its employees.  *See* Def. Prologis Mot. Summ. J. 11-14.  Plaintiff does not dispute that there is no contractual right of control.  *See* Resp. 18-20.

Rather, both parties strongly contest whether there is a genuine issue of material fact as to whether Defendant Prologis retained actual control over the manner of work of Empire and its employees.  Defendant Prologis argues that it did not control the manner in which Empire or Plaintiff completed the repairs to its warehouse roof.  *See* Def. Prologis Mot. Summ. J. 15-20.  Defendant Prologis relies heavily on statements of its own employees that describe the hands-off management style of Empire.  For example, Defendant Prologis points to warehouse manager Rodriguez's statement that, "I believe that I don't have authority [to manage Empire], one because I do not supervise Empire's work, I do not hire their employees, I don't make safety rules for them, and I would expect that they would have some sort of safety consultation prior to going up on roofs . . . ."  *Id*. at 16-17 (quoting Rodriquez Dep. 56:2-7).  Defendant Prologis also points to Plaintiff's own statements that Defendant Prologis provided no supervision on the day of the accident.  *See id*. at 18-19 (citing Pl. Dep. 38:16-18, 41:10-14, 41:23-42:1, 61:16-22).

In response, Plaintiff argues that Defendant Prologis did in fact control the manner of Empire's work.  Plaintiff argues that the existence of the Repair List, adopted by Defendant Prologis, indicates that Defendant Prologis defined the scope of Empire's work.  *See* Pl.'s App.

16-17.  Plaintiff supports this point by highlighting Schreiner's deposition testimony, in which Schreiner testified that the relationship between Defendant Prologis and Empire was not one in which Empire was given free range to fix any issue with the warehouse roof.  *See* Pl.'s App. 17-18 (citing Schreiner Dep. 74:19-75:1).

A detailed list describing how to do repairs can be evidence of actual control over the manner in which work is performed.  *See Ball v. PPG Indus.*, H-10-4523, 2012 WL 2499935, at *2-3 (S.D. Tex. June 27, 2012).  The *Ball* court found that a work order describing distinct tasks such as "visually inspect tube bundle for corrosion," "clean bundle using pressurized water," "conduct pressure test," "report results of pressure test," and "clean up area" created, in part, a genuine issue of material fact as to actual control of the manner of work.  *Id*.

In this case, the Repair List provided by Defendant Prologis to Empire also contains a detailed list describing how to do the repairs to the roof.  *See* Schreiner Dep. 75:19-22 (testifying that Defendant Prologis adopted the Repair List); Def. Prologis Summ. J. Mot. 18 (stating that on the day of the accident Empire "used a list of repairs [Defendant Southern] had created . . . ").  For example, the Repair List instructs Empire to repair a skylight dome by "[r]e-secure[ing] (new drive pins) at the surface mount at the perimeter edge," while a different item instructs Empire to "[c]ut and patch 1-2" diameter blister . . . ."  Repair List 1.  Because the Repair List conceivably tells Empire how to repair the roof, a reasonable jury could conclude that Defendant Prologis controlled the manner in which Empire performed repairs on the warehouse roof.  *See Ball,* 2012 WL 2499935, at *2-3.

In addition to the specificity of the Repair List, Schreiner's testimony that Empire did not have free range on the roof, and the Court's duty to draw all reasonable inferences in favor of Plaintiff, as the nonmoving party, all indicate that a reasonable jury could find that Defendant

Prologis had actual control over Empire and Plaintiff's manner of work. *See Man Roland, Inc.*, 438 F.3d at 478-79; *Anderson*, 477 U.S. at 248.

Accordingly, there is a genuine issue of material fact as to the first condition of section 95.003: whether Defendant Prologis had control over the manner of Empire and Plaintiff's work on the roof.

### b.    Knowledge

The second condition of section 95.003 requires that, for the defendant to be liable, the defendant had "actual knowledge of the danger or condition resulting in the personal injury . . . ." Civ. Prac. & Rem. § 95.003.  Constructive knowledge is insufficient.  *Phillips*, 186 S.W.3d at 132.

Even though Defendant Prologis concedes that the issue of knowledge is not the "focus" of its arguments, Defendant Prologis still maintains that it never had knowledge of the danger or condition—that is, the uncovered, unguarded, and unsurrounded skylight—and therefore summary judgment is warranted.  Def. Prologis Mot. Summ. J. 21.  Defendant Prologis argues that Plaintiff has not produced any evidence of such knowledge.  *Id.*  Plaintiff counters with evidence indicating that Defendant Prologis, through its employees, had actual knowledge of the dangerous nature of the skylight.  *See* Resp. 22.  Specifically, Plaintiff points to warehouse manager Rodriguez's testimony that she "knew that [the skylights on the warehouse] were not covered."  Resp. 4 (citing Rodriquez Dep. 26:16-20).  Plaintiff also offers the deposition of Pedro Garcia, Defendant Prologis's maintenance technician for the warehouse, who stated that the previous maintenance technician had instructed him to "be aware of the skylights" and to not "get too close to them . . . because you can fall."  *Id.* (citing Resp. Ex. G  22:17-25, ECF No. 117-3).

The evidence offered by Plaintiff indicates that Defendant Prologis may have known of the danger; therefore there is a genuine issue of material fact.  *See Franks*, 2007 WL 2330296, at *7 (finding there was a genuine issue of material fact regarding knowledge when defendant's employee told others of the existence of the danger).  A reasonable jury could find the statements of Rodriquez and Garcia indicative of knowledge that the skylight was dangerous in its uncovered, unguarded, and unsurrounded state.  *See Anderson*, 477 U.S. at 248.  As such, there is a genuine issue of material fact as to the second condition of section 95.003: whether Defendant Prologis knew of the danger or condition.

c.        **Failure to warn**

The third condition of section 95.003 requires that, for the defendant to be liable, the defendant "failed to adequately warn" of the danger or condition.  Civ. Prac. & Rem. § 95.003. Neither party directly addresses the issue of whether Defendant Prologis failed to adequately warn Empire or Plaintiff about the skylight.  *See generally* Def. Prologis Mot. Summ. J.; Resp. 22 (generally stating that Defendant Prologis failed to warn).

Despite the absence of argument on this issue, the evidence in the record indicates that a reasonable jury could conclude that Defendant Prologis failed to adequately warn of the dangerous nature of the skylight.  *See Anderson*, 477 U.S. at 248.  In Plaintiff's deposition, he was asked if he had ever spoken to any Defendant Prologis employees.  Pl. Dep. 38:16-18.  He responded in the negative.  *Id*.  Moreover, when asked if anyone from Empire had informed him of the need "to wear a safety harness and be tied off while working around the skylights," Plaintiff also responded in the negative.  *Id*. at 62:4-8.  This evidence suggests, but does not establish, that Defendant Prologis neither directly warned Plaintiff nor indirectly warned Plaintiff, through Empire, of the dangers associated with the skylight.  Because there is some

17

evidence, and because all inferences must be drawn in favor of for the non-moving party, there is a genuine issue of material fact as to the third condition of section 95.003: whether Defendant Prologis adequately warned of the danger or condition. *See Man Roland, Inc.*, 438 F.3d at 478-79; *Anderson*, 477 U.S. at 248.

In total, there are questions of material fact regarding control, knowledge, and adequate warning. As such, Defendant Prologis is not entitled to the protections of section 95.003, and, therefore summary judgment is not appropriate with regard to Plaintiff's negligence and premises liability claims. *See Franks*, 2007 WL 2330296, at *7-8 (also denying summary judgment when there were questions of material fact as to control, knowledge, and adequate warning).

### 4. Negligent hiring claim

Finally, the Court addresses Plaintiff's claim against Defendant Prologis for negligent hiring. On August 10, 2012, the Court granted Plaintiff leave to amend his pleadings and add a claim for negligent hiring. Order 25. On August 16, 2012, Plaintiff submitted his Amended Complaint, which included a claim that "Defendant Prologis negligently hired and negligently retained Defendant Southern . . . ." Am. Compl. 3.

Defendant Prologis acknowledges this additional claim, but does not address it in its Motion for Summary Judgment. *See* Def. Prologis Mot. Summ. J. 1-2. Without explaining why, Defendant Prologis simply asserts that chapter 95—in other words, section 95.003—shields it from the negligent hiring claim. *See id*. at 2. The plain language of chapter 95 suggests otherwise. Chapter 95 covers claims arising from conditions on property. *See* Civ. Prac. & Rem. § 95.002 (providing that chapter 95 only applies to a claim "that *arises from* the condition or use of an improvement to real property where the contractor or subcontractor constructs,

repairs, renovates, or modifies the improvement") (emphasis added).  In contrast, a negligent

hiring claim arises from the act of hiring.  *See, e.g.*, *Johnson v. Historic Sys., Inc.*, 03-97-00503-

CV, 1999 WL 46687, at *1 (Tex. App. Feb. 4, 1999) ("Negligent hiring occurs when an

employer hires an employee whom the employer knew or by the exercise of reasonable care

should have known was incompetent or unfit, thereby creating an unreasonable risk of harm to

others.").  However, the Court does not resolve the question of whether section 95.003 bars a

negligent hiring claim, because for reasons articulated above, whether section 95.003 applies to

this case is a question of fact for a jury to decide.  For this reason, Defendant Prologis's Motion

for Summary Judgment is inappropriate with regard to Plaintiff's negligent hiring claim.

### C.     Defendant Southern's Motion for Summary Judgment

Like Defendant Prologis, Defendant Southern also moves for summary judgment against

Plaintiff's negligence and premises liability claims.[4]  *See generally* Def. Southern Mot. Summ. J.

With regard to Plaintiff's general negligence claim, Defendant Southern argues that summary

judgment is appropriate because Plaintiff has failed to establish the existence of a duty, a breach

of duty, or a proximate cause relating to Plaintiff's injuries.  *See id*. at 8-13.  With regard to

Plaintiff's premises liability claim, Defendant Southern argues that summary judgment is

appropriate because evidence indicates that it did not control the warehouse and, in any event, it

did not control the details of Plaintiff's work on the warehouse roof.  *See id*. at 4-7.

Plaintiff's response to Defendant Southern's Motion for Summary judgment is contained

in just five sentences.  *See* Resp. 20.  These five sentences only cite to evidence in the record

pertaining to whether Defendant Southern had a duty to report dangerous roof conditions to

Prologis.  *See id*.  Plaintiff never discusses or marshals evidence regarding breach of duty or

proximate cause.  *See id*.

---

[4] Plaintiff does not raise a negligent hiring claim against Defendant Southern.

### 1.    General negligence

Under Texas common law, the "elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).  A duty can either be assumed by contract or imposed by law.  *J.P. Morgan Chase Bank, N.A. v. Texas Contract Carpet, Inc.*, 302 S.W.3d 515, 530 (Tex. App. 2009).  As such, the existence of a duty is question of law to be decided from the facts alleged in the case.  *Phillips*, 801 S.W.2d at 525 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983)).  However, the determination of breach of that duty is a question of fact.  *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 933 (Tex. App. 1989).  Finally, proximate cause is composed of two elements: cause in fact and foreseeability.  *Doe*, 907 S.W.2d at 477.  When determining whether a cause in fact exists, the test is "whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred."  *Id.* (internal quotation marks omitted).  Foreseeability, meanwhile, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission."  *Id.* at 478.  The plaintiff bears the burden of proving all of these elements.  *See, e.g.*, *Moore v. Kitsmiller*, 201 S.W.3d 147, 151 (Tex. App. 2006).

First, Defendant Southern argues that it owed no duty to Plaintiff, that even if a duty was owed, none was breached, and finally, that there is no evidence that Defendant Southern's actions were the proximate cause of Plaintiff's injuries.  Def. Southern Mot. Summ. J. 8-13.  Defendant Southern argues that neither contract nor law, in this case, imposes on it any duty to Plaintiff.  *Id.* at 8.  To support this position, Defendant Southern draws an analogy to cases where

an engineering firm with a contractual obligation to monitor a work site did not have a separate

duty to report OSHA violations, and where an architecture firm that drafted building plans was

not responsible for later construction defects.  *Id*. at 8-9 (citing *Romero v. Parkhill, Smith &*

*Cooper, Inc.*, 881 S.W.2d 522 (Tex. App. 1994); *Black + Vernooy Architects v. Smith*, 346

S.W.3d 977 (Tex. App. 2011)).  To rebut this, Plaintiff points to the deposition testimony of

Rodriguez, the warehouse manager, in which she stated that she believed it was Defendant

Southern's responsibility to notify Prologis of safety defects in the warehouse roof.  Resp. 20

(citing Rodriquez Dep. 20:7-21:11).

Second, assuming that there was a duty, Defendant Southern argues that its failure to note

violations of OSHA regulations was not a breach of this duty.  Def. Southern Mot. Summ. J. 10-

13.  Defendant Southern argues that when its workers were on the warehouse roof and inspecting

it, the warehouse was not a workplace and therefore OSHA regulations did not apply.  *Id*. at 12-

13.  Plaintiff does not respond to this argument.

Third, Defendant Southern argues that Plaintiff has presented no evidence that any breach

of duty was the proximate cause of Plaintiff's injuries.  *Id*. at 13.  Again, Plaintiff does not

respond to this argument.

The Court is cognizant that a failure to respond to a motion for summary to judgment is

not grounds for granting the motion.  *Hibernia Nat'l. Bank v. Administracion Cent. Sociedad*

*Anonima*, 776 F.2d 1277, 1278-79 (5th Cir. 1985) (citing *John v. Louisiana (Bd. of Trustees for*

*State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)).  Rather, it is the moving party that

bears the initial burden of demonstrating that there is no genuine issue of material fact.  *See*

*Celotex*, 477 U.S. at 322-23.  The moving party can meet this burden by demonstrating the

absence of a genuine issue of material fact.  *Little*, 37 F.3d at 1075.  This can be accomplished by

pointing to the non-moving party's absence of evidence. *See, e.g.*, *People's United Equip. Fin. Corp. v. Seminole-Civil, Inc.*, H-11-0374, 2012 WL 1556187, at *1 (S.D. Tex. May 1, 2012) (citing *Little,* 37 F.3d at 1075).  If the moving party meets this burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  The non-moving party's failure to produce such specific facts is grounds for summary judgment. *See, e.g.*, *People's United Equip.*, 2012 WL 1556187, at *1-2 (citing *Little,* 37 F.3d at 1075).

Here, Defendant Southern has met its burden by indicating that Plaintiff has failed to produce evidence of proximate cause. *See id*. at *1.  Therefore, Plaintiff has the burden of indicating specific facts showing that there is a genuine issue of material fact as to proximate cause. *See Matsushita*, 475 U.S. at 587.  Plaintiff has not met this burden.  It is unclear from the filings just what duty was owed and how it was breached.  Regardless, Plaintiff makes no mention of proximate cause whatsoever and has not presented any evidence indicating that Defendant Southern's acts or omissions were the proximate cause of Plaintiff's injuries.  Given Plaintiff's failure to present any evidence on this point, summary judgment is warranted with regard to his general negligence claim. *See Little,* 37 F.3d at 1075.

### 2. Premises liability

Under Texas common law, there are four elements to a premises liability claim.  These elements are "(1) [a]ctual or constructive knowledge of some condition on the premises by the owner/operator; (2) [t]hat the condition posed an unreasonable risk of harm; (3) [t]hat the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) [t]hat the

owner/operator's failure to use such care proximately caused the plaintiff's injuries." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).

Defendant Southern makes two arguments as to why summary judgment should be granted against Plaintiff's premises liability claim. First, Defendant Southern argues premises liability only arises under Texas law if the defendant owns or controls the premises. Def. Southern Mot. Summ. J. 4-5. Defendant Southern argues that it never owned or controlled the warehouse. *See id.* Second, Defendant Southern argues that even if it owned or controlled the warehouse roof, it can only be liable under Texas law if it controlled the manner of Plaintiff's work. *Id.* at 5-7 (citing *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). Defendant Southern argues that there is no evidence that it controlled the manner in which Plaintiff was working on the warehouse roof. *Id.* at 6. As part of this argument, Defendant Southern again notes that there is no evidence of a causal connection between its actions and Plaintiff's injuries. *See id.* Again, Plaintiff does not respond to these arguments.

The Court does not directly address Defendant Southern's two premises liability arguments. Rather, Defendant Southern has indicated that there is a lack of evidence as to causation. *See id.* Causation, a component of proximate cause, is an essential element of a premises liability claim. *See Keetch*, 845 S.W.2d at 264. Therefore, Plaintiff has the burden of indicating specific evidence showing that there is a genuine issue of material fact as to causation. *See Matsushita*, 475 U.S. at 587. However, Plaintiff has produced no such evidence. Accordingly, summary judgment is warranted with regard to Plaintiff's premises liability claim. *See Little,* 37 F.3d at 1075.

In summary, because Defendant Southern has met its burden of demonstrating that there is no genuine issue of material fact as to both of Plaintiff's claims and Plaintiff has failed to

indicate specific facts showing that there is a genuine issue of material fact with regard to either claim, summary judgment is warranted with respect to both claims.  *See Little,* 37 F.3d at 1075.

**III.    CONCLUSION**

For the reasons set forth herein, the Prologis Summary Judgment Motion, ECF No. 110, is **DENIED**.  The Defendant Southern Summary Judgment Motion, ECF No. 109, is **GRANTED.**

**SO ORDERED.**

SIGNED this 11th  day of March, 2013.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE